**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LITEPANELS, LTD. and VIVENDUM
PRODUCTION SOLUTIONS, INC.
                    Plaintiffs,

        v.

GVM PHOTOGRAPHIC EQUIPMENT, INC.
                    Defendant.

Civil Action No. 2:24-mc-00053

**ORDER**

AND NOW, this _____ day of _____, 2025, upon consideration of Third-Party Jian
Cheng Technology Inc.'s Motion to Vacate Writ of Execution and Set Aside U.S. Marshal's Sale
of Personal Property (ECF No. 11), Plaintiffs' Response in Opposition thereto, and all supporting
documentation, it is hereby ORDERED that the Motion is DENIED.

It is FURTHER ORDERED that:

1. The Writ of Execution issued by this Court on September 24, 2024, and the Amended
   Writ issued on October 16, 2024, shall remain in full force and effect;

2. The U.S. Marshal's Sale of Personal Property conducted on February 5, 2025, is
   confirmed and shall not be set aside;

3. The successful purchaser at the Marshal's Sale may take immediate possession of the
   purchased property upon tender of payment;

4. All parties in possession or control of the property sold at the Marshal's Sale shall grant
   the purchaser immediate access to retrieve said property;

5. If access to retrieve the purchased property is denied, the U.S. Marshal is authorized to
   use any reasonable force necessary to facilitate the purchaser's retrieval of the property;
   and

6. Jian Cheng Technology Inc., its officers, agents, employees and all persons acting in concert with them are enjoined from removing, transferring, or otherwise disposing of any property that was subject to the Marshal's Sale pending the purchaser's retrieval of same.

BY THE COURT:

_____
UNITED STATES DISTRICT JUDGE
NITZA I. QUIÑONES ALEJANDRO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LITEPANELS, LTD. and VIVENDUM PRODUCTION SOLUTIONS, INC.<br>                                    Plaintiffs,<br><br>          v.<br><br>GVM PHOTOGRAPHIC EQUIPMENT, INC.<br>                                    Defendant. | Civil Action No. 2:24-mc-00053 |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO JIAN CHENG TECHNOLOGY INC.'S MOTION TO VACATE WRIT OF EXECUTION AND SET ASIDE MARSHAL'S SALE OF PERSONAL PROPERTY

### I.    INTRODUCTION

Jian Cheng Technology Inc.'s ("JCT") motion to vacate the Writ of execution (the "Motion") and set aside the U.S. Marshal's sale represents the latest attempt in a coordinated scheme to attempt to evade a final, valid $2,757,341.60 judgment entered in Federal Court against GVM Photographic Equipment, Inc. ("GVM, Inc.") on July 22, 2024.

The facts immediately relevant to the Court's review of the motion are simple. Execution issued on a judgment entered by this Court and the writ was personally served by the U.S. Marshal at an address that GVM Inc. had identified as its own.

At time of service, the individuals on site identified themselves as "GVM" and the personal property located at the location was inventoried and levied. Within days JCT obtained counsel who simply claimed that the property levied was JCT's not GVM's. Plaintiffs noted for counsel that all outward indicia to that point in time belied that claim and that it was their understanding that all the inventory levied was owned by GVM Inc. Thereafter, notwithstanding having retained counsel and being granted continuances of the scheduled Sale, and having over

1

ninety (90) days to interpose an Objection where its naked claims of "different ownership" could be tested in a forum having judicial authority, *JCT took no action and made no filings whatsoever*. Rather JCT chose to wait until after a Sale had occurred and an unrelated third party had purchased the inventory to come before the Court.

This case presents the Court with a fundamentally different scenario then that involved in the cases relied upon by JCT in its motion. Unlike the cases cited by JCT where truly independent third parties had property attached (and that condition was known at the time of the levy), in this matter, claimed ownership was not at all in question or an issue until after the levy.

While there is irrefutable evidence that JCT is merely a continuation of GVM, Inc.'s business operations, that fact is not really the issue. What is the issue it that movant, JCT and its president, Mr. Xu intentionally created a situation where there exists, if movant's arguments are accepted, a material "mixture" of inventory "ownership" at the site of the levy.

As the evidence will show, JCT is simply a shell entity subsequently created by GVM, Inc.'s incorporator specifically to shield GVM, Inc.'s assets from the Plaintiff. If JCT owns any assets at the property levied upon, then its ownership is at least enmeshed and entwined with that of GVM Inc. and has been made to be (intentionally) indiscernible in an effort to frustrate a judgment creditor.

Despite JCT's attempts to characterize the execution process as procedurally deficient, the record demonstrates Plaintiffs' proper compliance with all applicable rules and all due process requirements. In fact, Plaintiffs voluntarily agreed on two separate occasions to postpone the sale of the properly levied GVM inventory so as to allow JCT's counsel to get familiar with the case, make an objection in a forum where its allegations could be tested for credibility, and to see

if some resolution could occur. Unfortunately, JCT's counsel did not intervene, or seek to assert any claim in a forum where such a claim could be tested until after the twice postponed sale actually occurred, and after the levied collateral was sold to a third party at the public sale.

JCT's motion to vacate should be denied, and the Marshal's sale confirmed.

## II.    **FACTUAL BACKGROUND**

Plaintiffs Litepanels Ltd. and Videndum Production Solutions, Inc. (collectively "Plaintiffs") obtained a judgment against GVM Photographic Equipment, Inc. in the amount of $2,757,341.60 on July 22, 2024, in the United States District Court for the District of New Jersey. This judgment was properly registered in this Court on September 19, 2024. Plaintiffs then sought a writ of execution for the U.S. Marshal to levy property belonging to GVM, Inc., which writ was issued by the Court on September 24, 2024, and later amended on October 16, 2024, to more specifically identify the location of GVM, Inc.'s property.

The U.S. Marshal served the writ of execution at the warehouse located at GVM's last known Pennsylvania address; 12285 McNulty Road, Unit 105, Philadelphia, PA 19154.[1]  At the Marshal's request, Plaintiff and counsel attended the service and Plaintiff had five (5) employees on hand who conducted an inventory of the property levied. The individuals in the property identified themselves as "GVM" and they were provided information on the levy and its import.

---

[1] **SEE: Exhibit 1**. email from GVM Inc (Jidi Chen, CFO of both GVM Inc and JCT) to its single largest customer, B&H Foto and Electronics Inc. notifying them of GVM Inc.'s "new address" of 12285 McNulty Rd, Suite 105, Philadelphia, PA 19154 – the address of the levy. Further, GVM Inc. has, since the start of its business operations, used a website at www.gvmled.com to market its products and itself. This website provided the public with addresses for GVM Inc's warehouse operations. First in South San Francisco, then at 4301 North Delaware Ave., Philadelphia, and finally at 12285 McNulty Road – the address of the levy. *After* the levy, all addresses have been removed from the website.

Shortly after the levy occurred, counsel for JCT contacted Plaintiff's counsel and asserted that "the property levied against was owned by JCT". The claim of "different" ownership was simply that; a claim made without testable support (i.e. not made under oath, nor subject to cross examination, or other verification) nor was it made in a venue which could compel production of factual data to test that data's credibility. Counsel for JCT was informed of the pending Sale and given the opportunity to file an Objection with this Court. Counsel for JCT requested two (2) postponements so that they could review the matter and advise their client. Ultimately JCT was given a full ninety-five (95) days from the levy to Object and to present its claim to ownership of the levied property to this Court. JCT chose not to. As a result, a publicly advertised and nationally attended Marshal's sale of the property was conducted on February 5, 2025, resulting in a purchase price of $272,500 for the levied GVM, Inc. property.

JCT seeks to now vacate the properly issued and served Writ of execution, and to set aside a validly held Marshal's sale, claiming it is an "independent third party" that was not given appropriate due process before "its" property was attached. However, as detailed below, the evidence clearly demonstrates that JCT is not independent from GVM. More importantly *for purposes of this motion* is the fact that JCT had a complete and unfettered ability and substantial opportunity to avail itself of the procedural remedies available to it, yet voluntarily chose not to do so. *In the light most favorable to JCT* – it created a situation where property claimed by it as its own was mixed with and indiscernible from that of GVM Inc., and then chose to not participate in established legal process until the rights of true third parties (the purchaser at the Marshall's Sale) were implicated and Plaintiffs had incurred substantial additional costs.

The historical facts of this matter are illuminating and are as follows:

4

### A. The Original License Agreement and Early Operations

Plaintiffs hold the seminal patents to LED based photographic lighting systems[2]. Plaintiffs' inventions were, in their time, groundbreaking and market transformative. The invention was immediately copied, and in order to protect their investments in the inventions, Plaintiffs' sought, and received, a General Exclusion Order from the United States International Trade Commission. This Order precluded the importation of LED photographic lights (such as those being offered by GVM and allegedly now by JCT) into the United States without a license.

GVM Inc., was incorporated by Zhi Sheng ("Jack") Xu (hereafter simply "Mr. Xu")[3], and while he was aware of the Order, he and GVM Inc chose instead to run the risk of seizure on importation so that GVM, Inc. might avoid the license fee.

In late 2019, this was discovered by Plaintiffs who successfully had GVM, Inc.'s products removed from Amazon. Immediately after removal, GVM, Inc. contacted Plaintiffs and sought a patent license agreement. A license was granted on the basis that GVM, Inc. was the sole importer and distributor of all GVM branded products in the United States. The patent license agreement was signed by Mr. Xu.

Almost immediately after executing the license agreement, it appears that Mr. Xu and GVM Inc. began implementing a scheme to evade its obligations to the Plaintiffs.

---

2 Today, the use of LED lighting in broadcast, motion picture and photographic applications is ubiquitous. In 2001 when Plaintiffs' patents were granted it was truly revolutionary and carried numerous advantages over the technology used at the time.

3 GVM Inc. began as "LATOUR Photographic Equipment Inc." and subsequently changed its name to GVM Inc. The original articles as well as the subsequent Amendment were signed by Mr. Xu. **SEE: Exhibit 2**.

## B. A Systematic Pattern of Corporate Manipulation

The timeline of Mr. Xu's and GVM Inc's corporate manipulations align <u>precisely</u> with Plaintiffs' efforts to enforce the license agreement signed by GVM, Inc.:

1. In March 2021, after repeated demands, GVM, Inc. finally submitted its first royalty report. Plaintiffs' initial review of the submitted report in August 2021 revealed an improper royalty calculation. More significantly, GVM, Inc. had failed to report sales for approximately one-half of its product offerings which were subject to the patent license agreement.

2. On May 18, 2022, Plaintiffs met with GVM, Inc. representatives, including Mr. Xu who participated by phone, to address GVM, Inc.'s serious reporting deficiencies. During this meeting, Plaintiffs detailed both GVM, Inc.'s improper calculations, and GVM, Inc.'s apparent concealment of numerous product lines from the submitted royalty reports. At this meeting it was made clear to GVM Inc. and to Mr. Xu that on the singular basis of GVM Inc's own reported sales (which ultimately were found to have been grossly underreported) that GVM Inc. owed Plaintiffs approximately $412,000.

3. <u>One (1) month later,</u> on June 22, 2022, Mr. Xu then formed JCT – a timing that demonstrates this entity was created specifically in response to GVM, Inc.'s liability and obligations as previously identified by Plaintiffs. **SEE: Exhibit 3**. The creation of this shell entity was unannounced to Plaintiff and was not discovered until the events giving rise to JCT's currently pending motion.

4. On March 4, 2023 and again on March 21, 2023 Plaintiffs wrote to GVM Inc. (email) noting that GVM Inc. was leaving Plaintiff's no choice but to file a lawsuit against it. In

the March 21, 202,3 email Plaintiffs provided GVM Inc. a draft form of Complaint in the hope that the seriousness of the situation would be made clear.

5.  Rather than address their obvious debts and fully recognizing Defendant GVM Inc's substantial royalty obligations, in April, 2023 <u>less than a month after receiving Plaintiffs' draft complaint</u>, Mr. Xu approached GVM Inc's principal customer, B&H Foto and Electronics Inc. (B&H) and requested that a "new" Vendor (movant herein "JCT") be recognized by B&H as a vendor.  Again, this was discovered by Plaintiffs under subpoena after service of the Writ on JCT.  Notably, the Vendor Agreement for JCT Inc. was signed by Mr. Xu.  **SEE: Exhibit 4.**

6.  While JCT Inc. and Mr. Xu had completed the initial documentation necessary to begin to establish a "new" Vendor with B&H <u>there were no other changes made to the offers for sale of GVM branded products, and no Orders were placed with JCT Inc</u>.!  Rather, all orders for all GVM branded products continued to be placed by B&H with GVM Inc.  All of these sales and purchases were offered, made and consummated with GVM Inc., and all payments by B&H for the products purchased continued to be made to GVM Inc.

7.  Plaintiffs filed suit against GVM Inc. in the United States District Court for the District of New Jersey as required by the License on July 5, 2023 at 23-3599 (KMW-MJS) and GVM Inc. was served with the Complaint on July 27, 2023.

8.  <u>Four (4) days after</u> service of the Complaint, on July 31, 2023, GVM Inc. wrote to B&H and stated "*We are still getting the check under GVM, but we want it under the new company name.  "Jian Cheng Technology Inc." now moving forward...*".  Mr. Xu was copied on that email.  **SEE: Exhibit 5.**  As of this date (July 31, 2023) <u>there was still no change in the actual Vendor of any GVM branded products, and all purchases by B&H of</u>

GVM branded products continued to be directed to, entered, and fulfilled by GVM Inc. To be clear: there was no change in the named seller (it remained GVM Inc. on all Purchase Orders), no change in product identification (SKU Codes), no change in product pricing, no change in contact individuals for the seller (GVM Inc.), no change in address for the seller (GVM Inc.) and no change in shipping terms or location or any other of the business terms and conditions extant with GVM Inc's principal customer, B&H.    B&H did not make the requested change in payment at this time – as it continued to view GVM Inc as the Vendor for the products it was purchasing.

9.  On August 16, 2023, less than three (3) weeks after receiving Plaintiffs' Complaint, JCT Inc., acting by Mr. Xu, entered a Lease for a warehouse location approximately 15 miles from the Warehouse facility housing GVM Inc. at 4301 N Delaware Ave., Philadelphia, PA. The 4301 N Delaware Ave location had been noted as JCT Inc.'s location on all Pennsylvania corporate filings made for that entity up to that date.

10. Notwithstanding service and knowledge of the Complaint, GVM Inc. chose not to respond and on September 6, 2023 the Clerk entered a default judgment against GVM Inc.

11. Six (6) days after the entry of the default, on September 12, 2023 Mr.Xu approached B&H and demanded (again) that all future payments due GVM Inc. be diverted to a bank account in the name of JCT Inc. SEE: **Exhibit 6.**

12. While payments for GVM branded products purchased from GVM Inc. by B&H were thereafter diverted to the bank account of JCT Inc., there was still no change in the actual Vendor of those products, and all purchases by B&H of GVM branded products continued to be directed to, entered, and fulfilled by GVM Inc. Once again, to be clear: there was no change in the named seller (it remained GVM Inc. on all Purchase Orders), no change in

8

product identification (SKU Codes), no change in product pricing, no change in contact individuals for the seller (GVM Inc.), no change in address for the seller (GVM Inc.) and no change in shipping terms or location or any other of the business terms and conditions extant with GVM Inc's principal customer, B&H.

13. From September 12, 2023 until (about) January 1, 2025 the approximate amount of Four Million Four Hundred Fifteen Thousand Seven Hundred and Ninety-Three and Forty-Three Cents ($4,415,793.43) has been paid to JCT Inc. by B&H _alone_ for sales of GVM branded products.  The majority of these payments relate to sales orders placed by B&H with GVM Inc.

14. On December 20, 2023 GVM Inc. notified B&H that GVM Inc. had moved its warehouse to 12285 McNulty Road, Bay 105, Philadelphia PA. **See: Exhibit 1.**

15. GVM Inc. continued to conduct business with B&H as "GVM Inc." at the McNulty Road address (the same address where the Writ was served and the inventory levied) and all sales being made by GVM Inc. on Purchase Orders issued by B&H were to GVM Inc.

16. On May 14, 2024 Plaintiffs filed a Final Motion for Judgment against Defendant GVM and notice of that filing was yet again provided GVM Inc.  During preparation of that Final Motion, Plaintiffs had discovered through documentation provided by B&H (under subpoena) that GVM Inc. had not only intentionally and materially misstated the First Sale Price of its products, intentionally not reported any sales at all on almost one-half of its products subject to Plaintiff's patents, but had also _grossly_ underreported the actual sales of the few products identified in its "reports".  Plaintiffs therefore requested the entry of a Final Judgment in the approximate amount of Two Million Seven Hundred Ninety-Seven Dollars ($2,797,000).

17. Within days of receiving notice of the filing the Motion for Final Judgment, Mr. Xu then approached B&H and requested a meeting where he demanded that the "Vendor" for all GVM branded products be immediately changed from GVM Inc. to JCT Inc.

18. On May 30, 2024, a mere sixteen (16) days after Plaintiffs had filed their Motion for Final Judgment, B&H agreed to change the "Vendor" of all GVM branded products from GVM Inc. to JCT Inc.   On information and belief, Mr. Xu participated in the meetings with B&H to seek this change of "Vendor" and did so with the sole intent to defraud Plaintiffs and to avoid the clear contractually agreed obligations of GVM Inc.  Defendant Xu signed the "new" Vendor Agreement with B&H on behalf of JCT Inc. **SEE: Exhibit 7**.

19. While B&H appears to have changed the name of the "Vendor" to JCT Inc. and the Purchase Orders from B&H appear to have subsequently been issued to JCT Inc. *no other changes occurred* in or to the relationship of those involved.  To be clear yet again: there was no change in product identification (SKU Codes), no change in product pricing, no change in contact individuals for the seller, no change in address for the seller (now claiming however to be JCT Inc.), no change in shipping terms or location, nor was there any change in the B&H EDI access rights.

20. All of the documentation mentioned above with regard to the manipulations by Mr. Xu, GVM Inc. and movant JCT, have come to light through discovery conducted after the service of the Writ.

### C. Recent Developments: A Pattern of Deception

The documentary evidence, particularly shipping records, provides conclusive proof that the purported separation between GVM, Inc. and JCT is mere fiction. Bills of Lading from September 2023 through October 2024 continued to identify "GVM Photographic Equipment Inc." as the shipper of record, despite JCT's claim that it had taken over GVM, Inc.'s business operations. True and correct copies of an indicative sample of these Bills of Lading are attached hereto as **SEE: Exhibit 8.**

The timing of changes to this documentation is particularly revealing. On October 30, 2024, the U.S. Marshal served the writ of execution at the warehouse located at McNulty Road. Then, the very next day, shipping documentation suddenly changed and began identifying JCT as the shipper. **SEE: Exhibit 9**. This abrupt shift in documentation practices, which occurred only <u>after</u> the levy was conducted, strongly evidences GVM, Inc's and JCT's coordinated efforts to evade the collection of the entered judgment and demonstrates GVM, Inc.'s and JCT's wrongdoing and fraud, rather than any claimed legitimate business practice.

Notably, at the time of the U.S. Marshal's service of the writ, employees at the warehouse identified themselves as employees of GVM Inc., and all boxes levied were plainly marked with the "GVM" branding. **SEE: Exhibit 10**.

Further evidence of JCT and GVM, Inc.'s bad faith practices in this matter can be seen in the attached document received from Philips Electronics, showing that GVM Inc. continues to be listed as a licensee of Philips Electronics, not JCT Inc. GVM, Inc. is similarly the licensee in this matter and the owner of the levied and sold GVM product. **SEE: Exhibit 11.**

### D. Fraudulent Transfers Following Judgment

The fraudulent nature of the transfers became even more blatant after entry of the default judgment. Just six days after the clerk entered default on September 6, 2023, Mr. Xu then directed B&H to divert all payments for GVM sales to JCT's bank account. However, GVM, Inc. remained the actual vendor, GVM, Inc. continued to fulfill the orders of GVM product, and GVM, Inc. continued to generate the shipping documentation for the GVM product. The only change was the destination of where payments were to be sent.

From September 12, 2023, until approximately January 1, 2025, the amount of $4,415,793.43 has been paid to JCT Inc. by B&H alone for sales of GVM branded products. Most of these payments related to sales orders placed by B&H with GVM Inc.

When Plaintiffs moved for entry of the $2.7 million judgment in May 2024, Mr. Xu quickly arranged for B&H to then change its vendor agreement from GVM, Inc. to JCT. However, the evidence shows this was a change in form rather than substance:

- The products and SKU codes remained identical;
- Pricing structures stayed the same;
- The same individuals remained points of contact;
- Operations continued from the same physical location; and
- Bills of lading continued identifying GVM, Inc. as shipper until after the levy.

What emerges from this timeline is an unmistakable pattern: at each critical juncture when Plaintiffs took steps to enforce its rights—identifying unpaid royalties, providing notice of a draft complaint, filing suit, obtaining default judgment, seeking final judgment, and executing the judgment—Mr. Xu responded within days or weeks by taking corresponding steps to hide GVM, Inc.'s assets through JCT. These were not legitimate business reorganizations, but

12

calculated responses to avoid liability, as evidenced by the timing, the identical operations,
personnel, products, and customer relationships.

In the 95 days between the levy on October 30, 2024, and the Marshal's sale on February
5, 2025, JCT and GVM, Inc. had ample opportunity to address these issues. Instead, they waited
until the day of the sale to claim an emergency, after multiple postponements granted by
Plaintiffs in Plaintiffs' good faith attempts to resolve the matter. This manufactured emergency
alone should be grounds for denying JCT's petition.

### III.    LEGAL ARGUMENT

#### A.    JCT Misapplies The Cases It Cites As Ample Due Process Protection Was Afforded

JCT's argument in its motion relies on *Local Union No. 626 United Bhd. of Carpenters &
Joiners of Am. Pension Fund v. Delmarva Concrete Corp.*, 2004 WL 350452 (E.D. Pa. Feb. 24,
2004), *ABC Sewer Cleaning Co. v. Foxco, Inc.*, 1990 WL 139391 (E.D. Pa. Sept. 21, 1990), and
*Strick Corp. v. Thai Teak Products Co.*, 493 F. Supp. 1210 (E.D. Pa. 1980).  These cases,
however, involve fundamentally different factual scenarios and ultimate legal issues, and are
readily distinguishable from the present matter.

The cases cited by JCT stand for the proposition that a judgment creditor may not execute
on property *admittedly owned by a third party* based solely on conclusory allegations without
proper procedural safeguards.    In each of the cases referenced by JCT the plaintiff (judgment
holder) had executed against property whose title ownership was not in question and that
(undisputed) title was not in the named judgment debtor.  In each case, the judgment holder
argued that the liened property was subject to execution as the third party was the *alter ego* of the

13

judgment debtor.  <u>In each case the issue (ownership) and objection were properly and timely raised by the garnishee/defendant</u>.

Unlike the innocent third parties in the cases cited by JCT, who promptly asserted their rights upon learning of execution proceedings, JCT deliberately delayed asserting any claim for 95 days despite having counsel, and with full knowledge of the proceedings. This strategic delay is the antithesis of the good faith  and the due process protections that were designed to protect legitimate third parties.

Pennsylvania law provides clear procedures for third parties claiming ownership of levied property. A third party may file a property claim with the sheriff or petition the court to intervene before sale. Pa. R.C.P. 3258. JCT, despite being represented by counsel familiar with these procedures, chose not to utilize any of these established remedies. Courts have consistently held that a party who fails to utilize available pre-sale remedies may waive their right to post-sale relief.

The cases relied on by JCT have no bearing whatsoever on the issue before the Court. The issue before the Court is one whose existence was entirely manufactured by the voluntary actions (inactions) of JCT, GVM Inc. and by Mr. Xu.  It is an issue that we need not be here arguing.  This issue was caused by and intentionally created by JCT.

The issue presented to the Court by JCT's motion is whether to set aside a US Marshall's sale that was properly noticed, properly advertised, based on a properly issued Writ, and emanating on a properly issued judgment wherein a writ was properly served by the U.S. Marshal and inventoried only <u>AFTER</u> that property was sold to an unrelated third party.

The issue is not whether JCT is an *alter ego* of the judgement debtor. It is and that question is not open to rational debate given the *outlined* facts stated above. But while that fact is not irrelevant, it is also not determinative to this motion.

What is determinative is that in each of the cases referenced by JCT the involved entities, *alter egos* or not, appropriately responded to legal process. Each was served with a Writ and each came forward and objected. In each case the legal "title ownership" was not in question. What was at issue was a claimed leap frogging from a judgement debtor to an *alter ego* and *doing so without due process and an opportunity to contest*.

**That is not the case at hand.**

In this matter, GVM Inc., JCT and Mr. Xu purposefully ignored established process and refused to come before this Court to present their "objection" until after the Sale. Unlike the cases cited by JCT in its motion - JCT was given an abundant opportunity to make its claim of "ownership" in an appropriate forum. For whatever reason JCT chose not to do so. There is no due process question here.

The question here is whether appropriate process of this Court may be blithely ignored, and the appropriate expectations of third party purchasers at an entirely proper judicial sale, may then be set aside.

**B. Plaintiffs Properly Followed Applicable Procedural Requirements**

JCT incorrectly claims that Plaintiffs failed to follow proper procedures in executing against its assets. In fact, Plaintiffs' execution process complied with all requirements of both Federal Rule of Civil Procedure 69, and with applicable Pennsylvania law.

Plaintiffs properly registered their judgment in this Court, and then filed a praecipe for writ of execution with an affidavit of counsel. The writ was properly issued by the Court and was properly entered against the judgment debtor only. That Writ was then properly served by the U.S. Marshal. The Marshal's sale was then conducted (after providing JCT two continuances in order file an objection or act in some responsible manner) in complete accord with applicable procedures.

JCT relies heavily on the procedural requirements outlined in *Jonnet*, but those requirements apply to pre-judgment attachments, not to post-judgment executions! Even if those requirements were applicable here, which they are not, Plaintiffs still substantially complied with those requirements by:

1. Filing an affidavit setting forth the factual basis for the execution;

2. Obtaining judicial approval for the writ of execution;

3. Providing notice to JCT through service of the writ on the warehouse, and to JCT's counsel;

4. Having discussions with JCT's counsel of the anticipated Marshal's sale and then twice postponing the sale while JCT's counsel got "up to speed"; and

5. Affording JCT an opportunity to contest the execution through appropriate motion practice.

Even under *Jonnet's* framework, Plaintiffs substantially complied with the spirit of those requirements by: (1) filing an affidavit setting forth the factual basis for execution; (2) obtaining

judicial approval for the writ; (3) providing actual notice to JCT through service and communications with counsel; (4) postponing the sale twice to afford JCT time to assert any claims; and (5) offering JCT ample opportunity to contest the execution through appropriate motion practice. JCT received every meaningful protection *Jonnet* seeks to provide - notice and opportunity to be heard - but JCT strategically chose not to avail itself of those protections.

Pennsylvania Rule of Civil Procedure 3121(d) does provide a mechanism for setting aside a writ of execution, but only upon a showing of "(1) a defect in the writ, service or levy, (2) immunity or exemption of property, or (3) any other legal or equitable ground." JCT has not established any of these grounds. In fact, JCT chose not to make any challenge at all on these grounds or present its claim of ownership in an appropriate forum. There was no defect in the writ, service, or levy; the GVM property is not immune nor exempt; and JCT, a subsequently created entity by Mr. Xu in an effort to avoid GVM, Inc.'s contractual liabilities to the Plaintiffs has not established any other legal or equitable ground for setting aside the writ.

### C. Setting Aside the Marshal's Sale Would Reward Fraudulent Conduct

Pennsylvania courts have found that a court may set aside a sale "upon proper cause shown". *See Merrill Lynch Mortgage Capital v. Steele*, 859 A.2d 788, 791 (Pa. Super. 2004). These courts have interpreted this provision to require evidence of fraud, lack of authority to make the sale, or a defect or irregularity in the sale process that caused or contributed to an inadequate price. *See, e.g., id.; Sun W. Mortg. Co. v. Sanders*, 215 A.3d 688 (Pa. Super. Ct. 2019); *Wells Fargo Bank, N.A. v. Frankel*, 120 A.3d 392 (Pa. Super. Ct. 2015).

17

JCT has not established any of these grounds. There was no fraud in the sale process, the U.S. Marshal was fully authorized to conduct the sale, and JCT has not identified any defect or irregularity that resulted in an inadequate price. Instead, JCT seeks to set aside the sale based solely on its claim to be a third party whose property was wrongfully taken, a claim it had ample prior opportunity to make before this Court, but chose not to.

Setting aside the Marshal's Sale would effectively reward Mr. Xu's continuing conduct, on behalf of JCT and GVM, Inc. to fraudulently attempt to evade the judgment. This Court should not countenance such conduct, which undermines the integrity of the judicial process, and improperly denies Plaintiffs the relief to which they are entitled.

The doctrine of unclean hands is particularly relevant here. As the Supreme Court has observed, "he who comes into equity must come with clean hands." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241 (1933). JCT, having deliberately structured its operations to create confusion about ownership, and having strategically delayed asserting its rights until after the Marshal's sale, now seeks equitable relief from this Court. JCT's conduct should preclude the extraordinary relief JCT seeks. The evidence demonstrates that JCT, through Mr. Xu, intentionally created a situation where ownership of assets was obscured between GVM and JCT. JCT cannot now benefit from the very confusion it deliberately created.

### D. JCT's Unreasonable Delay Bars Relief Under Principles of Laches and Waiver

Laches bars relief where a party has unreasonably delayed asserting its rights to the prejudice of another party. Here, JCT had actual knowledge of the levy in October 2024, retained counsel, and engaged in discussions about the levy, yet waited 95 days - until after the sale occurred - to assert its rights formally. This delay has prejudiced not only Plaintiffs, who

18

incurred substantial costs in conducting the sale, but also the good-faith purchaser who has acquired rights to the property.

Courts have consistently held that "equity aids the vigilant, not those who slumber on their rights." *See, e.g., Kansas v. Colorado*, 514 U.S. 673, 687 (1995). JCT's deliberate choice to wait until after the sale to assert its alleged rights constitutes both waiver and laches that independently bar the relief sought.

In the execution context specifically, Pennsylvania courts recognize that third parties must promptly assert their rights to property subject to execution. JCT's failure to file an objection or otherwise seek judicial intervention for over three months falls well outside the bounds of reasonable diligence. This calculated delay, in the face of explicit knowledge that the Marshal's sale was proceeding, constitutes a waiver by JCT of any right to challenge the sale after the fact.

## IV.    CONCLUSION

For the foregoing reasons, JCT's motion to vacate the writ of execution and set aside the Marshal's sale should be denied. The evidence demonstrates that JCT is a subsequently created entity which is the alter ego of the judgment debtor, GVM, Inc., and that the execution process complied with all applicable procedural requirements. The Court should therefore confirm the Marshal's sale and allow Plaintiffs to obtain the relief for which they are entitled.

In the event that the Court believes that a determination need be made of "ownership" of the levied inventory then, respectfully, it should: (1) require JCT to post a bond for the sale proceeds of $272,500; 2) require JCT to pay interest to the third party purchaser for the time value of its investment; 3) reimburse Plaintiffs for all counsel fees and costs occasioned by JCT's

failure to appropriately present its claims to this Court prior to the Sale, including the costs of the

Auctioneer and freight hauler that Plaintiff retained for said sale; and (4) set an expedited

schedule for determining the ownership issue. This approach would protect the rights of all

parties while addressing JCT's belated concerns.

Respectfully submitted,

*Phillip D. Berger*

Phillip D. Berger, Esquire
Berger Law Group, PC
919 Conestoga Road
Building 3, Suite 114
Bryn Mawr, PA 19010

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LITEPANELS, LTD. and VIVENDUM PRODUCTION SOLUTIONS, INC.<br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>GVM PHOTOGRAPHIC EQUIPMENT, INC.<br>　　　　　　　　　Defendant. | Civil Action No. 2:24-mc-00053 |

**CERTIFICATE OF SERVICE**

I, Phillip Berger, hereby certify that I caused a true and correct copy of the forgoing to be

electronically filed and electronically served upon all counsel of record via the Court's ECF

system.

Respectfully submitted,

*Phillip D. Berger*

Phillip D. Berger, Esquire
Berger Law Group, PC
919 Conestoga Road
Building 3, Suite 114
Bryn Mawr, PA 19010

**EXHIBIT 1**

| | |
|---|---|
| **From:** | AP Inventory <apinventory@bhphoto.com> |
| **Sent:** | Wednesday, December 20, 2023 10:46 AM |
| **To:** | jidi@gvmled.com |
| **Cc:** | rmarequest; Armando Roman; RTV; zee@gvmled.com; Shaye Friedman; Samuel Lax |
| **Subject:** | RE: ??Updation to GVM Warehouse Address |

Hello jidi@gvmled.com,

I will forward this case to the Vani Kharan, she handles all contact changes. She will reach out to you shortly.

Please let me know if you require any further assistance,

Gregoria Majchrzyk Ext. 2339
B&H Photo Video and Pro Audio
The Professional's Source.
http://www.bhphotovideo.com
Case #83120355

> Contact us at 800-606-6969
> Visit us at The B&H SuperStore located at 420 9th Avenue at 34th Street in New York City.

--------------- Original Message ---------------
**From:** jidi@gvmled.com [jidi@gvmled.com]
**Sent:** 12/20/2023 4:55 AM
**To:** shayef@bhphoto.com; samuelcs@bhphoto.com
**Cc:** rmarequest@bhphoto.com; arrocs@bhphoto.com; rtv@bhphoto.com; apinventory@bhphoto.com; zee@gvmled.com
**Subject:** ??Updation to GVM Warehouse Address

CAUTION: This email originated from outside of the B&H organization. Do not click on links or open attachments unless you recognize the sender and know that the content is safe.

Dear all,

1

Hope everything is going all well. Kindly please note that GVM has moved to a new warehouse at the following address. We will be sending out units and accessories, receiving returns and other shipments at this address.

GVM Photographic Equipment inc
12285 McNulty Rd Suite 105
Philadelphia, PA19154
Phone: (267) 934-1261 Fax n/a

Sincere congratulations in advance on a wonderful Christmas.

Paramount wishes,
Jidi

jidi@gvmled.com



**EXHIBIT 2**

4077288

| **ARTS-GS** | **Articles of Incorporation of a General Stock Corporation** |
| --- | --- |

*To form a **general stock corporation** in California, you can fill out this form or prepare your own document, and submit for filing along with:*

- *A **$100** filing fee.*

- *A separate, non-refundable **$15** service fee also must be included, if you **drop off** the completed form or document.*

***Important!** Corporations in California may have to pay a minimum $800 yearly tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.*

*Note: Before submitting the completed form, you should consult with a private attorney for advice about your specific business needs.*

FILED
Secretary of State
State of California

OCT 23 2017

ICC    *This Space For Office Use Only*

**For questions about this form, go to** *www.sos.ca.gov/business/be/filing-tips.htm.*

**Corporate Name** *(List the proposed corporate name. Go to www.sos.ca.gov/business/be/name-availability.htm for general corporate name requirements and restrictions.)*

① *The name of the corporation is* ___LATOUR PHOTOGRAPHIC EQUIPMENT INC___

**Corporate Purpose**

② *The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.*

**Service of Process** *(List a California resident or a California registered corporate agent that agrees to be your initial agent to accept service of process in case your corporation is sued. You may list any adult who lives in California. You may **not** list your own corporation as the agent. **Do not** list an address if the agent is a California registered corporate agent as the address for service of process is already on file.)*

③ a. ___ZHISHENG XU___
    *Agent's Name*

   b. ___18351 COLIMA ROAD #255___    ROWLAND HEIGHTS    **CA**  91748
    *Agent's Street Address (if agent is **not** a corporation) - Do not list a P.O. Box*  *City (no abbreviations)*  State  Zip

**Corporate Addresses**

④ a. ___18351 COLIMA ROAD #255___    ROWLAND HEIGHTS    CA  91748
    *Initial Street Address of Corporation - Do not list a P.O. Box*  *City (no abbreviations)*  State  Zip

   b. _____
    *Initial Mailing Address of Corporation, if different from 4a*  *City (no abbreviations)*  State  Zip

**Shares** *(List the number of shares the corporation is authorized to issue. Note: Before shares of stock are sold or issued, the corporation must comply with the Corporate Securities Law of 1968 administered by the California Department of Business Oversight. For more information, go to www.dbo.ca.gov or call the California Department of Business Oversight at (866) 275-2677.)*

⑤ *This corporation is authorized to issue only one class of shares of stock.*

  *The total number of shares which this corporation is authorized to issue is* ___100000___.

*This form must be signed by each incorporator. If you need more space, attach extra pages that are 1-sided and on standard letter-sized paper (8 1/2" x 11"). All attachments are made part of these articles of incorporation.*

▶ *Zhi Sheng Xu*    ZHISHENG XU
   *Incorporator - Sign here*    *Print your name here*

| *Make check/money order payable to:* **Secretary of State** | **By Mail** | **Drop-Off** |
| --- | --- | --- |
| *Upon filing, we will return one (1) uncertified copy of your filed document for free, and will certify the copy upon request and payment of a $5 certification fee.* | Secretary of State<br>Business Entities, P.O. Box 944260<br>Sacramento, CA 94244-2600 | Secretary of State<br>1500 11th Street, 3rd Floor<br>Sacramento, CA 95814 |

**Secretary of State**
**Certificate of Amendment of**
**Articles of Incorporation**

**Name Change Only - Stock**

| AMDT-
STK-NA |

A0824178

FILED ~~
Secretary of State
State of California

FEB 0 1 2019

This Space For Office Use Only

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee – $30.00**

Copy Fees – First Page $1.00 & .50 for each attachment page;
Certification Fee – $5.00

| 1. Corporation Name (Enter the exact name of the corporation as it currently is recorded with the California Secretary of State.) | 2. 7-Digit Secretary of State File Number |
|---|---|
| LATOUR PHOTOGRAPHIC EQUIPMENT INC | C4077288 |

**3. New Corporation Name**

**Item 3a:** Enter the number, letter or other designation assigned to the provision in the Articles of Incorporation being amended (e.g., "I," "First," or "A"). **See Instructions** if the provision in the Articles of Incorporation being amended does not include a number, letter, or other designation. Any attachment is made part of this document.

**Item 3b:** Enter the new corporate name.

3a. Article ___One___ of the Articles of Incorporation is amended to read as shown in Item 3b below:

3b. The name of the corporation is _GVM PHOTOGRAPHIC EQUIPMENT INC_

**4. Approval Statements**

4a. The Board of Directors has approved the amendment of the Articles of Incorporation.

4b. Shareholder approval was (**check one**):

☑ By the required vote of shareholders in accordance with California Corporations Code section 902. The total number of outstanding shares of the corporation entitled to vote is _____100,000_____. The number of shares voting in favor of the amendment equaled or exceeded the vote required. The percentage vote required was more than 50%.

☐ Not required because the corporation has no outstanding shares.

**5. Read, sign and date below (See instructions for signature requirements. Note: Both lines must be signed.)**

We declare under penalty of perjury under the laws of the State of California that the matters set forth herein are true and correct of our own knowledge and we are authorized by California law to sign.

01/25/2019
Date

_Xu Zhisheng_
Signature

ZHI SHENG XU
Type or Print Name of President

01/25/2019
Date

_Xu Zhisheng_
Signature

ZHI SHENG XU
Type or Print Name of Secretary

**EXHIBIT 3**

DocuSign Envelope ID: 7EC25FF2-9947-48B8-9DC7-82B89925D087

Pennsylvania Department of State

## PENNSYLVANIA DEPARTMENT OF STATE
## BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS

☐ **Return document by mail to:**

Name

Address

City

☑ Return docume.

**Return per instructions
on the expedite counter form.**

**Articles of Incorporation - For Profit**
DSCB:15-1306/2102/2303/2702/2903/3101/3303/7102

TCO2206220931

Read all instructions prior to completing. This form may be submitted online at https://www.corporations.pa.gov/.

Fee: $125          ☐ I qualify for a veteran/reservist-owned small business fee exemption (see instructions)

Check only one:   ☑ Business-stock (§ 1306)      ☐ Management (§ 2703)     ☐ Benefit (§ 3303)
                  ☐ Business-nonstock (§ 2102)    ☐ Professional (§ 2903)   ☐ Cooperative (§ 7102)
                  ☐ Business-statutory close (§ 2303)  ☐ Insurance (§ 3101)

In compliance with the requirements of the applicable provisions (relating to corporations and unincorporated associations), the undersigned, desiring to incorporate a corporation for profit, hereby states that:

1. The name of the corporation *(corporate designator required, i.e., "corporation," "incorporated," "limited," "company," or any abbreviation thereof. "Professional corporation" or "P.C." permitted for professional corporations)*:

   Jian Cheng Technology Inc.

2. *Complete part (a) or (b) – not both:*

(a) The address of this corporation's proposed registered office in this Commonwealth is:
    *(post office box alone is not acceptable)*

| Number and Street | City | State | Zip | County |
|---|---|---|---|---|
| | | | | |

(b) The name of this corporation's commercial registered office provider and the county of venue is:

| c/o: LEGALINC CORPORATE SERVICES INC. | Allegheny |
|---|---|
| Name of Commercial Registered Office Provider | County |

3. The corporation is incorporated under the provisions of the Business Corporation Law of 1988.

4. Check and complete one:
   ☐ The corporation is organized on a nonstock basis.
   ☑ The corporation is organized on a stock share basis and the aggregate number of shares authorized is:

        10,000          .

DocuSign Envelope ID: 7EC25FF2-9947-48B8-9DC7-82B89925D087

DSCB:15-1306/2102/2303/2702/2903/3101/3303/7102 – 2

---

5. The name and address, including number and street, if any, of each incorporator *(all incorporators must sign below)*:

| Name | Address |
|------|---------|
| Zhisheng Xu | 4301 N Delaware Avenue, Building D, Philadelphia, PA 19137 |

---

6. The specified future effective date, if any:_____.

month/day/year   hour, if any

---

7. Additional provisions of the articles, if any, attach an 8½ by 11 sheet.

---

8. *Statutory close corporation only*: Neither the corporation nor any shareholder shall make an offering of any of its shares of any class that would constitute a "public offering" within the meaning of the Securities Act of 1933 (15 U.S.C. § 77a *et seq.*).

---

9. *For Cooperative Corporation Only.*
   *Check and complete one:*
   ____ The corporation is a cooperative corporation and the common bond of membership among its members is: _____.
   ____ The corporation is a cooperative corporation and the common bond of membership among its shareholders is:_____.

---

10. *Benefit corporations only:* This corporation shall have the purpose of creating general public benefit.

Strike out if inapplicable: This corporation shall have the purpose of creating the enumerated specific public benefit(s): _____

_____

---

IN TESTIMONY WHEREOF, the incorporator(s) has/have signed these Articles of Incorporation this

_____ day of _____6/15/2022_____, _____.

DocuSigned by:

*Zhisheng Xu*

Signature

_____

Signature

_____

Signature

**EXHIBIT 4**



## Vendor Key Terms Sheet

**B&H Buyer:** Shaye Friedman

**Legal Company Name ("Vendor"):** JIAN CHENG TECHNOLOGY INC.

**Brand Name:** GVM

**Address:** 4301 N Delaware Ave, Building D Philadelphia PA 19137

MFR

**Vendor Contact:** ken          **Email:** Ken@gvmled.com          **Tel No:** 650.534.8186

This B&H Vendor Agreement, comprised of this Key Terms Sheet ("KTS") and the B&H Vendor Terms and Conditions ("T&Cs") viewable at www.bandh.com/terms&conditions (collectively the "Agreement"), effective as of the date of the last signature below (the "Effective Date"), governs the Vendor-Vendee relationship between B & H Foto & Electronics Corp., a New York corporation ("B&H"), and the Vendor set forth above.

### KEY TERMS

**Stock Shipments:** (See Exhibit A of the B&H T&Cs for the B&H Shipping Requirements).

**Freight Terms: FOB Destination** Vendor is responsible for loss or damage to the goods while in transit.
PO Minimum: Vendor does not require a minimum purchase to place a PO.
Free Shipping: Vendor offers Free Shipping for stock PO's.

**Drop Shipments:**

Vendor offers Drop Shipments.
**Freight Terms: FOB Destination** Vendor is responsible for loss or damage to the goods while in transit.
Free Shipping: Vendor offers free shipping for Drop shipments.

**Electronic Data Interchange (EDI):** Vendor will conduct its business with B&H via the B&H EDI Portal/System to receive POs, and to send advance shipping notice ("ASN") and invoices.

**Barcode Requirement:** Each individual product must be marked with a registered UPC barcode label.

**Order Receipt And Inspection Rights:** B&H has 5 business days from delivery to inspect for shortages, overages, damage, defective or non-conforming goods (a "Delivery Claim"). Vendor pays all costs related to returns due to a Delivery claim.

**Payment Terms:** Credit terms are: net 30 days, calculated from the date B&H receives the invoice.

**Price Protection:** Price Decreases effective before shipment must be reflected on the order's invoice. B&H will receive a credit for the price difference (between the old, higher invoice net price and the new, lower invoice net price) for its on hand and in-transit inventory of the affected products.

**Stock Balancing:** If a product does not sell or meet B&H's sales goals, B&H may return it for a refund or credit (B&H's choice).

**Defective Returns:** B&H is responsible for all shipping costs relating to returns. B&H will request an RMA from vendor for all returns which vendor will provide within 2-3 business days. B&H is not required to return defective products costing $20 or less per unit to receive a credit refund.

**Price Lists (including Updates):** Price list must be emailed at least 30 days before being effective and take effect the later of 30 days after being received by B&H, or the price list's stated effective date.

The parties hereto hereby accept the key terms of this Agreement as selected above. The B&H T&Cs as may be amended from time-to-time are hereby incorporated and made a part hereof. Individual Purchase Orders are governed by the B&H T&Cs in effect at the time of such order.

**B&H FOTO & ELECTRONICS CORP.**

Sign:_____

Print Name:_____

Title:_____

Date:_____

**VENDOR**

Sign: *Zhi Sheng xu*

Print Name: _Zhisheng xu_

Title: _C E O_

Date: _05/12/2023_

**EXHIBIT 5**

**GVM**

Great Video Maker

Web: www.gvmled.com | Email: jack@gvmled.com | Direct: 669-261-0198 | Address: 1016 Lawson St Ste B, City of industry, CA 91748

# WIRE TRANSFER FORM

**PLEASE NOTE: The following information must be used when wiring funds to GVM affliated entity.**

**\*To ensure the secure delivery of your check, please ensure that you mail the check to the following provided address securely: <u>12285 McNulty Road,  Unit 5, Philadelphia, PA 19154</u>.\***

**Business/account name:** Jian Cheng Technology Inc.

**Business Address:** 1016 Lawson St Ste B, City of industry, CA 91748

**Account number:** ▮▮▮▮▮▮7295

**Routing number:**
Electronic : ▮▮▮▮▮▮▮
Wire transfer: ▮▮▮▮▮▮▮

**SWIFT Code:** BOFAUS3N

**Bank name:** Bank of America, N.A.

**Bank Address:** 222 Broadway, New York, NY 10038

**City:** New York

**State:** New York,

**Postal Code:** 10038

**Type of account:** Business Account

zhi sheng xu

Jack xu

09/12/2023

*Thank you for the business!*

**EXHIBIT 6**

# B&H Photo – ACH Authorization Form

## CREDIT/DEBIT AUTHORIZATION FORM
### Completed by

*Jian Cheng Technology, Inc.*

Vendor/payee name

I/we hereby authorize _____ B & H Foto & Electronics Corp. _____, hereinafter called COMPANY, to initiate entries to my/our checking/savings accounts at the financial institution listed below, hereinafter FINANCIAL INSTITUTION, and if necessary initiate adjustments for any transactions credited/debited in error. I/We acknowledge that the origination of ACH transactions to my/our account must comply with the provisions of U.S. law. *This authority will remain in effect until COMPANY is notified by me/us in writing to cancel it in such time as to afford COMPANY and FINANCIAL INSTITUTION a reasonable opportunity to act on it.*

*Zhisheng Xu*

Authorizer name

*CEO*

Authorizer title

*zhisheng xu*

Signature

*09/12/23*

Date

*Zhisheng Xu*

Operations staff primary contact name

*Jack@gvmled.com*

E-mail address

*669-261-0198*

Phone

_____ _____ _____
Operations staff alternate contact     E-mail address     Phone

_____ _____ _____
Operations staff alternate contact 2     E-mail address     Phone

☒ For Direct Deposit (ACH Credits)          ☐ For Direct Payments (ACH Debits)

### PLEASE PRINT

*Bank of America. N.A.*

Name of Financial Institution

*222 Broadway, New York, NY 10038*

Address of Financial Institution/Branch, City, State, Zip

*Jian Cheng Technology, Inc.*

Vendor/Payee (Receiver) Name(s)

*1016 Lawson St, Ste B, City of Industry*

Street Address (no PO Boxes)

*CA 9,748*

City, State, Zip

Electronic: ██████ 22     ████████ 7295     *Checking*

Bank's ABA (Routing) Number     Account Number     Checking or Savings?

These numbers are located on the bottom of your check as follows:

⑈ 123456789 ⑈ 1234567890123 ⑆
**Routing Number**     **Account Number**

NOTE: Written credit or debit authorizations must provide that the Receiver may revoke the authorization only by notifying the Originator in the manner specified in the authorization.
(Updated 3/15/2016)

**EXHIBIT 7**



# Vendor Key Terms Sheet

**B&H Buyer:** Shaye Friedman

**Legal Company Name ("Vendor"):** JIAN CHENG TECHNOLOGY INC.

**Brand Name:** GVM

**Address:** 4301 N Delaware Ave, Building D Philadelphia PA 19137

MFR

**Vendor Contact:** Ben Chen          **Email:** ben@gvmled.com          **Tel No:** 650.534.8186

This B&H Vendor Agreement, comprised of this Key Terms Sheet ("KTS") and the B&H Vendor Terms and Conditions ("T&Cs") viewable at www.bandh.com/terms&conditions (collectively the "Agreement"), effective as of the date of the last signature below (the "Effective Date"), governs the Vendor-Vendee relationship between B & H Foto & Electronics Corp., a New York corporation ("B&H"), and the Vendor set forth above.

## KEY TERMS

**Stock Shipments:**  (See Exhibit A of the B&H T&Cs for the B&H Shipping Requirements).

**Freight Terms: FOB Destination** Vendor is responsible for loss or damage to the goods while in transit.
PO Minimum: Vendor does not require a minimum purchase to place a PO.
Free Shipping: Vendor offers Free Shipping for stock PO's.

**Drop Shipments:**

Vendor offers Drop Shipments.
**Freight Terms: FOB Destination** Vendor is responsible for loss or damage to the goods while in transit.
Free Shipping: Vendor offers free shipping for Drop shipments.

**Electronic Data Interchange (EDI):** Vendor will conduct its business with B&H via the B&H EDI Portal/System to receive POs, and to send advance shipping notice ("ASN") and invoices.

**Barcode Requirement:** Each individual product must be marked with a registered UPC barcode label.

**Order Receipt And Inspection Rights:** B&H has 5 business days from delivery to inspect for shortages, overages, damage, defective or non-conforming goods (a "Delivery Claim"). Vendor pays all costs related to returns due to a Delivery claim.

**Payment Terms:** Credit terms are: net 30 days, calculated from the date B&H receives the invoice.

**Price Protection:** Price Decreases effective before shipment must be reflected on the order's invoice. B&H will receive a credit for the price difference (between the old, higher invoice net price and the new, lower invoice net price) for its on hand and in-transit inventory of the affected products.

**Stock Balancing:** If a product does not sell or meet B&H's sales goals, B&H may return it for a refund or credit (B&H's choice).

**Defective Returns:** B&H is responsible for all shipping costs relating to returns. B&H will request an RMA from vendor for all returns which vendor will provide within 2-3 business days. B&H is not required to return defective products costing $20 or less per unit to receive a credit refund.

**Price Lists (including Updates):** Price list must be emailed at least 30 days before being effective and take effect the later of 30 days after being received by B&H, or the price list's stated effective date.

The parties hereto hereby accept the key terms of this Agreement as selected above. The B&H T&Cs as may be amended from time-to-time are hereby incorporated and made a part hereof. Individual Purchase Orders are governed by the B&H T&Cs in effect at the time of such order.

| **B&H FOTO & ELECTRONICS CORP.** | **VENDOR** |
|---|---|
| Sign: | Sign: ZhiSheng Xu |
| Print Name: Lazer Werzberger | Print Name: ZhiSheng Xu |
| Title: Head of Purchasing | Title: CEO |
| Date: May 30, 2024 | Date: 5 / 30, 2024 |

**EXHIBIT 8**

| SHIPPER (FROM) | CONSIGNEE (TO) |
|---|---|
| GVM Photographic Equipment Inc | B&H Photo Video Fulfillment Shipping Center |
| 12285 McNulty Rd Suite 105 | 400 Cedar Ln |
| Philadelphia, PA 19154 | Florence, NJ 08518 |
| Phone: (267) 934-1261 Fax: n/a | Phone: (212) 239-7500 Fax: n/a |
| Contact: | Contact: |
| Notes: | Notes: |

| Shipping Units | HM* | Kinds of Packaging, Description of Articles<br>Special Marks and Exceptions | CLASS | WEIGHT |
|---|---|---|---|---|
| 4 Pallets | | 78 cartons | 0 | 7000 LB |
| 4 pallets | | | 0.00 Ln ft | |
| Pickup Date: 10/29/2024 Ready: 9:00 AM Close: 9:00 AM | | | Total Weight: 7000 | |

Pro Number:

Pickup Number:

PO #: YF241028883J, YF2410281760J YF24
YF2410142038J, SS240906675J (v2), YF24(

(Place Pro Label Here)

BMB8462955    S.T.I.
ASN
ucc

DATE 10/29/2024 13:23:49
USER YEOSCS

X
P:4 B:78

**EIGHT PREPAID TO:**
ipping
e , #458
Y 11211

**Additional Services:**

This is to certif
materials are pro
packaged, marke
proper condition f
to the applicat
Department of Tran.

By: _____

...ou value of the property.

bject to the conditions of section 7, d this
pment is to be delivered to the consignee
nout recourse on the consignor. the
consignor shall sign the following statement:
The carrier shall not make delivery of this
shipment without payment of freight and all
other lawful charges.

(SIGNATURE OF CONSIGNOR)

**SPECIAL INSTRUCTIONS:**

The parties acknowledge that this Bill of Lading is a contract between the Shipper and Carrier. Received, subject to the classifications and lawfully filed tariffs contained in the NMF 100 in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of packages unknown), marked, consigned, and destined as indicated above, which said carrier (the word carrier being understood throughout the contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com, on the shipment date. Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com, and shipper agrees that said terms and conditions are accepted for him and his assigns, including the limits of liability.

| SHIPPER GVM Photographic Equipment Inc | PER | DATE 10/29/24 |
|---|---|---|
| CARRIER MAK LINK, LLC | PER | DATE |
| CONSIGNEE B&H Photo Video Fulfillment Shipping Center | PER | DATE |

* HM indicates Hazardous Material                                  STRAIGHT BILL OF LADING (ORIGINAL NON-NEGOTIABLE)

To Shipper: Please review and confirm the accuracy of the information contained in this bill of lading and revise as needed.

To Carrier: Notations such as STC (said to contain), SWP (shrink wrap pallet) will not be accepted and will not insulate carrier from liability in the event that the number of shipping units received is less than indicated above.

DRIVER MUST VERIFY PIECE COUNTS | DISCREPANCIES MUST BE REPORTED WITHIN 48 HOURS OF PICK UP

| SHIPPER (FROM) | | CONSIGNEE (TO) | |
|---|---|---|---|
| GVM Photographic Equipment Inc | | B&H Photo Video Fulfillment Shipping Center | |
| 12285 McNulty Rd Suite 105 | | 400 Cedar Ln | |
| Philadelphia, PA19154 | | Florence, NJ 08518 | |
| Phone: (267) 934-1261 Fax n/a | | Phone: (212) 239-7500 Fax n/a | |
| Contact: | | Contact: | |
| Notes: | | Notes: | |

| Shipping Units | HM* | Kinds of Packaging, Description of Articles Special Marks and Exceptions | CLASS | WEIGHT |
|---|---|---|---|---|
| 4 Pallets | | 103 cartons | 0 | 7000 LB |
| 4 pallets | | 102 | 0.00 Ln ft | |
| Pickup Date: 10/15/2024 Ready: 9:00 AM Close: 2:00 PM | | | Total Weight: 7000 | |

Pro Number:
Pickup Number:
PO #: YF240802869J, YF2409241484J, YF2410071005J,
SS2410071286J ;YF2410141756J, YF2410142038J

| (Place Pro Label Here) | 3RD PARTY BILL FREIGHT PREPAID TO: |
|---|---|
| | BMB Shipping |
| | 130 Lee Ave , #458 |
| | Brooklyn, NY 11211 |

| Additional Services: | This is to certify that the above - named Shipment Value Not Specified. | Subject to the conditions of section 7, if this |
|---|---|---|
| Delivery Appointment | materials are properly classified, described, packaged, marked and labeled, and are in Note - Where the rate is dependent on value, proper condition for transportation according shippers are required to state in writing the to the applicable regulations of the agreed or declared value of the property. Department of Transportation. <br><br> By: _____ | shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. <br><br> (SIGNATURE OF CONSIGNOR) |

**SPECIAL INSTRUCTIONS:**

The parties acknowledge that this Bill of Lading is a contract between the Shipper and Carrier. Received, subject to the classifications and lawfully filed tariffs contained in the NMF 100 in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com, on the shipment date. Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com, and shipper agrees that said terms and conditions are accepted for him and his assigns, including the limits of liability.

| SHIPPER GVM Photographic Equipment Inc | PER | DATE 1/15/24 |
|---|---|---|
| CARRIER JCALOGISTIC CORP | PER | DATE 10.15.24 |
| CONSIGNEE B&H Photo Video Fulfillment Shipping Center | PER | DATE |

* HM indicates Hazardous Material      STRAIGHT BILL OF LADING (ORIGINAL NON-NEGOTIABLE)

To Shipper: Please review and confirm the accuracy of the information contained in this bill of lading and revise as needed.
To Carrier: Notations such as STC (said to contain), SWP (shrink wrap pallet) will not be accepted and will not insulate carrier from liability in the event that the number of shipping units received is less than indicated above.
DRIVER MUST VERIFY PIECE COUNTS | DISCREPANCIES MUST BE REPORTED WITHIN 48 HOURS OF PICK UP

BMB8455763          S.T.I.
                    ASN
                    UCC
DATE: 10/16/2024  09:20:22
USER: FCOOPER
X
P:4  B:102

Page: 1



BMB Shipping
130 Lee Ave , #458
Brooklyn, NY 11211
Tel. (516) 282-7447 Fax. N/A
bmbshlp.com

#73
# 15270354

| PICKUP DATE: | 11/27/2024 |
| SHIPPERS NO. | |
| BOL NO. | 20354 |

**Load: 20354**

# BILL OF LADING

MAK LINK, LLC

| SHIPPER (FROM) | CONSIGNEE (TO) |
|---|---|
| **GVM Photographic Equipment Inc** | **B&H Photo Video Fulfillment Shipping Center** |
| 12285 McNulty Rd, Suite 108 | 400 Cedar Ln |
| Philadelphia, PA 19154 | Florence, NJ 08518 |
| Phone: Fax n/a | Phone: (212) 239-7500 Fax: n/a |
| Contact: | Contact: |
| Notes: | Notes: |

| Shipping Units | HM* | Kinds of Packaging, Description of Articles Special Marks and Exceptions | CLASS | WEIGHT |
|---|---|---|---|---|
| 5 Pallets | | 135 cartons | 0 | 7000 LB |
| 5 pallets | | | 0.00 Ln ft | |
| Pickup Date: 11/27/2024 Ready: 9:00 AM Close: 9:00 AM | | | Total Weight: 7000 | |

Pro Number:
Pickup Number:
PO #: YF2409241484J (v2), SS240906795J (v3), YF241112
YF2410071005J, SS2407231122J, YF2411051121J

(Place Pro Lab

**S.T.I.**
**ASN**
**ucc**

BMB8510195
DATE: 11/27/2024  12:06:56
USER: YEO5CS
X    4. (.
P:5    B:135

**FREIGHT PREPAID TO:**
Shipping
Ave , #458
NY 11211

**Additional Services:**
Delivery Appointment

This is to
materials a
packaged, m
proper conditi
to the appl
Department of T
By:

Subject to the conditions of section 7, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

(SIGNATURE OF CONSIGNOR)

**SPECIAL INSTRUCTIONS:**

The parties acknowledge that this Bill of Lading is a contract between the Shipper and Carrier. Received, subject to the classifications and lawfully filed tariffs contained in the NMF 100 in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above, which said carrier (the word carrier being understood throughout the contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification, as well as those outlined at destination. As on the shipment date. Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbshlp.com, and shipper agrees that said terms and conditions are accepted for him and his assigns, including the limits of liability.

| SHIPPER GVM Photographic Equipment Inc | PER | DATE 11 2( 2( |
| CARRIER MAK LINK, LLC | PER | DATE |
| CONSIGNEE B&H Photo Video Fulfillment Shipping Center | PER | DATE |

* HM Indicates Hazardous Material

STRAIGHT BILL OF LADING (ORIGINAL NON-NEGOTIABLE)

To Shipper: Please review and confirm the accuracy of the information contained in this bill of lading and revise as needed,
To Carrier: Notations such as STC (said to contain), SWP (shrink wrap pallet) will not be accepted and will not insulate carrier from liability in the event that the number of shipping units received is less than indicated above.
DRIVER MUST VERIFY PIECE COUNTS | DISCREPANCIES MUST BE REPORTED WITHIN 48 HOURS OF PICK UP

# Packing List

**Order No. :** SS2407231122J, SS240906795J (v.3), YF2409241484J (v.2),
**Packing List No. :** YF2409241484J.C.4.NJF
**Packing List Status :** draft

**Customer :** B&H
**Packing List Date :** 2024-11-25

## Shipment Information

**Requested Ship Date :**

**Cancel After Ship Date:** 2024-09-24

## Packing Summary

**Gross Weight :** 150 Kilogram
**Quantity :** 5 Cartons

**Gross Volume :** 5,000 Cubic Meter

## ITEM SUMMARY

| STYLE | COLOR | SIZE |
|---|---|---|
| G169 | | 5 |
| GP-120QD | | 40 |
| GVM-8100C | | 40 |
| GVM-PD80B | | 40 |
| GVM-PRO-SD650B | | 20 |
| GVM-SD300S | | 1 |
| GVM-TL15RS | | 20 |
| GVM-VCC | | 10 |
| GVM-YG60SP | | 102 |
| P80S-2 | | 20 |

11/27/2024
PATLOCS JIAC
Receipt #: 8251545

## ITEM CASE PACK SUMMARY

| STYLE | DC NO. | STORE | | Case Pack | CTNS/STORE |
|---|---|---|---|---|---|
| G169 | NJF | | 5 | 1 | 1 |
| | | Sub Total | 5 | 1 | 1 |
| GP-120QD | NJF | | 40 | 1 | 1 |
| | | Sub Total | 40 | 1 | 1 |
| GVM-B100C | NJF | | 40 | 1 | 1 |
| | | Sub Total | 40 | 1 | 1 |
| GVM-PD60B | NJF | | 40 | 1 | 1 |
| | | Sub Total | 40 | 1 | 1 |
| GVM-PRO-SD650B | NJF | | 20 | 1 | 1 |
| | | Sub Total | 20 | 1 | 1 |
| GVM-SD300S | NJF | | 1 | 1 | 1 |
| | | Sub Total | 1 | 1 | 1 |
| GVM-TL15RS | NJF | | 20 | 1 | 1 |
| | | Sub Total | 20 | 1 | 1 |
| GVM-VCC | NJF | | 10 | 1 | 1 |
| | | Sub Total | 10 | 1 | 1 |
| GVM-YG60SP | NJF | | 102 | 2 | 2 |
| | | Sub Total | 102 | 2 | 2 |
| P80S-2 | NJF | | 20 | 1 | 1 |
| | | Sub Total | 20 | 1 | 1 |
| | TOTAL | | 298 | 5 | 5 |

## CARTON DETAILS

| DC No | Store | SSCC | UPC | Style | Color | Size | Qty | Run Code | Total Qty |
|---|---|---|---|---|---|---|---|---|---|
| NJF | | 00000017610000004290 | 01-GVGP120QD | GP-120QD | | | 40 | | 40 |
| NJF | | 00000017610000004306 | 3-GVMVCC | GVM-VCC | | | 10 | | 85 |
| | | | 2-GVG169 | G169 | | | 5 | | |
| | | | 8-GVMPD60B | GVM-PD60B | | | 40 | | |
| | | | 08-GVMTL15RS | GVM-TL15RS | | | 20 | | |
| | | | 01-GVMPROSD650B | GVM-PRO-SD650B | | | 20 | | |
| NJF | | 00000017610000004313 | 05-GVMB100C | GVM-B100C | | | 40 | | 40 |
| NJF | | 00000017610000004337 | 05-GVMYG60SP | GVM-YG60SP | | | 30 | | 51 |
| | | | 05-GVP80S2 | P80S-2 | | | 20 | | |
| | | | 13-GVMSD300S | GVM-SD300S | | | 1 | | |
| NJF | | 00000017610000004344 | 03-GVMYG60SP | GVM-YG60SP | | | 64 | | 72 |
| | | | 05-GVMYG60SP | GVM-YG60SP | | | 8 | | |

**EXHIBIT 9**



**BMB Shipping**
130 Lee Ave , #458
Brooklyn, NY 11211
Tel. (516) 262-7447 Fax. N/A
bmbship.com
Dispatcher: Aron Spira

| PICKUP DATE |
| --- |
| 11/27/2024 |
| SHIPPER'S NO. |
| BOL NO. |
| 20354 |

**Load: 20354**

# BILL OF LADING

**MAK LINK, LLC**

| SHIPPER (FROM) | CONSIGNEE (TO) |
| --- | --- |
| JIANCHENG TECHNOLOGY | B&H Photo Video Fulfillment Shipping Center |
| 12285 McNulty Rd, Suite 108 | 400 Cedar Ln |
| Philadelphia, PA 19154 | Florence, NJ 08518 |
| Phone: Fax: n/a | Phone: (212) 239-7500 Fax: n/a |
| Contact: | Contact: |
| Notes: | Notes: |

| Shipping Units | HM* | Kinds of Packaging, Description of Articles Special Marks and Exceptions | CLASS | WEIGHT |
| --- | --- | --- | --- | --- |
| 5 Pallets | | 135 cartons | 0 | 7000 LB |
| 5 pallets | | | 0.00 Ln ft | |
| Pickup Date: 11/27/2024 Ready: 9:00 AM Close: 9:00 AM | | | Total Weight 7000 | |

Pro Number:
Pickup Number:
PO #: YF2409241484J (v2), SS240906795J (v3), YF241122865J,
YF2410071005J, SS2407231122J, YF2411051121J

| (Place Pro Label Here) | 3RD PARTY BILL FREIGHT PREPAID TO: |
| --- | --- |
| | BMB Shipping |
| | 130 Lee Ave , #458 |
| | Brooklyn, NY 11211 |

| Additional Services: Delivery Appointment | This is to certify that the above - named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation. By : _____ | Shipment Value Not Specified. Note - Where the rate is dependent on value, shippers are required to state in writing the agreed or declared value of the property. | Subject to the conditions of section 7, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement: The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges. (SIGNATURE OF CONSIGNOR) |

**SPECIAL INSTRUCTIONS:**

The parties acknowledge that this Bill of Lading is a contract between the Shipper and Carrier. Received subject to the classifications and lawfully filed tariffs contained in the NMF 100 in effect on the date of the issue of this Bill of Lading, the property described above in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated above, which said carrier (the word carrier being understood throughout the contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com on the shipment date. Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification, as well as those outlined at bmbship.com, and shipper agrees that said terms and conditions are accepted for him and his assigns, including the limits of liability.

| SHIPPER JIANCHENG TECHNOLOGY | PER | DATE |
| --- | --- | --- |
| CARRIER MAK LINK, LLC | PER | DATE |
| CONSIGNEE B&H Photo Video Fulfillment Shipping Center | PER | DATE |

* HM indicates Hazardous Material
To Shipper: Please review and confirm the accuracy of the information contained in this bill of lading and revise as needed.

STRAIGHT BILL OF LADING (ORIGINAL NON-NEGOTIABLE)

**EXHIBIT 10**



**EXHIBIT 11**

Signify

# GVM Photographic Equipment Inc.

View all licensees

# GVM Photographic Equipment Inc.

United States

Visit website

## Application areas

Other / Specialty

## Disclaimer

This database contains names of companies that have entered into a license agreement with Signify covering patents licensed under the EnabLED LED Luminaires & Retrofit Bulbs Licensing Program (or previously under the Color Kinetics Licensing program). It does not necessarily contain the complete of list of all companies that currently have such license agreements in place. The information in this database has been compiled as accurately as possible at the time of compilation. The contents of all licenses are confidential and the information in this database is based solely upon publicly available information regarding trademarks and brands used by a licensee and applications areas addressed by a licensee. Consequently, the contents of this database do not imply or make any statement in relation to any individual product of any licensee

